

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 17, 1991

Mr. Jack E. Crump
Executive Director
Texas Commission on Jail Standards
P. O. Box 12985
Austin, Texas 78711

Opinion No. DM-24

Re: Whether detention centers and similar facilities are "jails" for purposes of the requirements of Local Government Code section 351.006(d), (e) regarding single cell and dormitory space in "county jails," and related questions (RQ-2125)

Dear Mr. Crump:

You ask the following questions relative to the authority of the Texas Commission On Jail Standards under chapter 511 of the Government Code to establish standards for various types of jail facilities:

> Are low risk facilities, county correctional centers, lock-ups, and detention centers considered jails?

> May the Texas Commission on Jail Standards develop standards for low risk facilities, county correctional centers, and lock-up facilities?

> If so, may these facilities be designed without using the statutory requirement for jails?

The Commission on Jail Standards is required to establish "minimum standards for the construction, equipment, maintenance, and operation of county jails." Gov't Code § 511.009(a)(1). You wish to know whether the commission may establish standards for jail facilities that do not comply with standards for a minimum percentage of single occupancy cells established for county jails by state law. Subchapter A of chapter 351 of the Local Government Code, first adopted in 1957, states that the commissioners courts "shall provide safe and suitable jails for their respective counties" and sets various standards, in addition to the minimum percentage of single cells, that define safe and suitable jails. Acts 1987, 70th Leg., ch. 883, § 1, at 2979; *see, e.g.,* Local Gov't Code §§ 351.004 (structural and

maintenance requirements), 351.005 (separation of various classes of prisoners), 351.006(a) - (c) (separate cells, dormitories, and dayrooms; capacities of cells and dormitories), 351.007 (space requirements), 351.008 (access to dayroom), 351.009 (safety vestibule), 351.010 (sanitation and health), 351.011, 351.012 (furnishings), 351.013 (bunks). As you have cited in your request only section 351.006(d) and (e), relating to single cell and dormitory space, we understand your concern to be focused on those provisions. Accordingly we address here only the applicability of those provisions to the facilities in question.

Subsections (d) and (e) of section 351.006 of the Local Government Code state:

> (d) A county jail must provide enough one-person cells to accommodate 30 percent or more of its total designated prisoner capacity.

> (e) A county jail may provide dormitory-type space to accommodate not more than 40 percent of its total designated prisoner capacity.

The standards set out in chapter 351 are the minimum standards for county jails, and each county must comply with those standards and with the rules and procedures of the Commission on Jail Standards. Local Gov't Code § 351.002. If a jail does not comply with the state laws or the rules, standards, or procedures of the Jail Standards Commission, the commission must make certain reports and may ultimately prohibit confinement of prisoners in the jail. Gov't Code §§ 511.011, 511.012.

The commission's rules for new jail construction, adopted in 1978 under its authority to establish standards for "county jails," provide that single cells should in no event comprise less than 30 percent of the capacity of the facility. 37 T.A.C. § 259.54. Its rules for lock-ups and low-risk facilities,[1] also adopted in 1978, do not establish a minimum percentage of single cells. Id. §§ 259.150, 259.238. Your

---

[1] A lock-up "shall consist of one or more single cells and may include multiple-occupancy cells, or dormitories, for the temporary custody of inmates (not to exceed 72 hours) awaiting court appearance or transfer to jail." 37 T.A.C. § 259.125. A low-risk facility houses inmates sentenced to work release, school release, or weekend detention, or inmates who require minimal supervision. Id. § 259.202.

questions raise an issue as to the validity of the rules for lock-ups and low-risk facilities, as well as the commission's authority to adopt rules for other jail facilities that do not require single cells for 30 percent of the capacity of the facility.

In our opinion, the commission's authority to regulate county jails and to establish standards for them applies to a wider class of jail facilities than that described by chapter 351 of the Local Government Code. The commission may in an appropriate case adopt standards for a jail facility that do not mandate a minimum of 30 percent single cells.[2]

The Commission on Jail Standards was created to implement the state policy that "all county jail facilities in the state conform to certain minimum standards of construction, maintenance, and operation." Acts 1975, 64th Leg., ch. 480, at 1278. It has authority to promulgate rules establishing minimum standards for the "construction, equipment, maintenance, and operation of county jails," and to enforce its rules and state laws relating to standards for county jails. Gov't Code §§ 511.009, 511.011 - 511.014. In the act creating the commission, the legislature gave "county jail" the following broad definition:

> 'County jail' means any jail, lockup, or other facility *that is operated by or for a county* for the confinement of persons accused or convicted of an offense.

Acts 1975, 64th Leg., ch. 480, § 2, at 1279 (emphasis added); *see* Gov't Code § 511.001(2).

This definition of "county jail" encompasses facilities that are not within the description of "safe and suitable jails" found in chapter 351 of the Local Government Code. The comparative breadth of the above definition can be seen by examining the statutory description of "safe and suitable jail." The language shows that the "safe and suitable jail" is built and operated by the county. A county that contracts

---

[2]The relationship between chapter 511 of the Government Code and chapter 351 of the Local Government Code is shown more clearly by the language that existed prior to the non-substantive recodification than that in the codes. We will therefore rely to some extent on the language of the 1975 enactment that established the Commission on Jail Standards and also reenacted the provisions on the duty of the commissioners courts to establish safe and suitable jails. *See* Acts 1975, 64th Leg., ch. 480, at 1283.

with another county whose jail is in compliance is exempted from the requirements of the statute. Thus, the term "safe and suitable jails" does not include jails operated "for" the county. Moreover, the legislation contemplates that the county would have one all-purpose jail, as indicated by the use of the singular to refer to "jail" in the following quotation:

> [T]he term 'safe and suitable' jails shall be construed to mean jails either now or hereafter constructed, except that, in lieu of maintaining its own *jail*, any county whose population is not large enough to justify building a new *jail* or remodeling its old *jail* shall be exempt from the provisions of this Act by contracting with the nearest available county whose *jail* meets the requirements set forth in this Act.

Acts 1975, 64th Leg., ch. 480, § 15, at 1283 (emphasis added); *see* Local Gov't Code §§ 351.001, 351.003.[3]

The detailed provision on safety vestibules also indicates that chapter 351 relates to a traditional county jail, and does not contemplate alternative incarceration facilities such as a low-risk facility. Acts 1975, 64th Leg., ch. 480, at 1284; Local Gov't Code § 351.009.

It is well established that the Commission on Jail Standards has authority to regulate facilities that would not be within the provisions of chapter 351. Previous attorney general opinions have consistently ruled that the provisions now in Government Code section 511.009 directing the commission to establish minimum standards for "county jails" encompass any facilities used by a county for holding county prisoners. *See* Attorney General Opinions JM-272 (1984) (state-line justice

---

[3]Section 351.001 of the Local Government Code was amended in 1989 by the addition of subsection (b):

> (b) The jails [provided by the commissioners court] must be located at the county seat unless the county has only one jail, in which case the jail may be located anywhere in the county at the discretion of the commissioners court.

Acts 1989, 71st Leg., ch. 1, § 64(e), at 70.

centers); MW-559 (1982) (holding cells in county facilities separate and distinct from the county jail); *see also* Attorney General Opinions JM-1260 (1990); MW-328 (1981) (city jail holding county prisoners under contract).

If particular jail facilities are not within chapter 351, they are necessarily not subject to the requirements for single cells and dormitory space found in section 351.006(d) and (e) of the Local Government Code. The commission, in adopting standards for such ancillary facilities, has discretion to impose these requirements by rule.

By referring to "lockups" and to other jail facilities in the act creating the commission, the legislature has recognized counties' authority to establish more than one kind of detention facility. The legislature also recognized that Texas counties might differ as to the kind of jail facilities they needed, and authorized the commission to grant variances from state law to county jails. Gov't Code § 511.012. The establishment of the Commission on Jail Standards allowed for a degree of flexibility that the provisions for safe and secure jails did not allow.[4] The language of the statute establishing the Commission on Jail Standards as well as the policies underlying the statute persuade us that the commission has authority to adopt reasonable standards for ancillary jail facilities that do not incorporate the requirements of section 351.006(d) and (e). The reasonableness of standards developed for particular ancillary jail facilities must be determined on a case-by-case basis.

You note that the legislature has in recent years referred in statutes to kinds of county detention facilities other than "jails." *See* Local Gov't Code §§ 351.101 (county "may contract with a private organization to place *low-risk* county inmates in a detention facility operated by the organization"), 351.102 (county may contract with a private vendor to provide for a "jail, *detention center*, work camp, or related facility") (emphasis added); Acts 1987, 70th Leg., ch. 18 at 47; Acts 1983, 68th Leg.,

---

[4]The 1975 act was apparently motivated in part by findings that Texas county jails were by and large not in compliance with the requirements for county jails now set out in Local Government Code chapter 351, including the single cell dormitory requirements of section 351.006(d) and (e). *See* Texas Legislative Council, Statutory Standards and Present Conditions in Texas Jails, Report No. 62-2 (1973) (201 county jails found not to provide single cells sufficient to accommodate at least 30 percent of total designated prisoner capacity). Moreover, before 1975 no state agency had authority to enforce counties to comply with such statutory standards. *Id.* at 34.

ch. 898, at 5006; *see also* Local Gov't Code §§ 361.022 ("jail, *lock-up*, and other detention facilities" in state-line justice center), 351.181 (*county correctional centers*) (emphasis added); Acts 1989, 71st Leg., ch. 785, § 3.03, at 3486; Acts 1979, 68th Leg., ch. 760, at 1878.

We think it is clear that the facilities in question, where they are used by a county for the confinement of county prisoners, are subject to the authority of the Commission on Jail Standards. Local Government Code section 351.103(1) specifically subjects facilities constructed or operated by a private vendor under section 351.102 to commission standards and certification. With respect to "county correctional centers," established under Local Government Code sections 351.181 *et seq.*, the commission's authority must be exercised consistently with the provisions of section 351.184 providing for commission cooperation with the Texas Department of Criminal Justice in adopting standards for certification of those facilities for purposes of state funding under Code of Criminal Procedure article 42.13, section 11(b)(6). The provisions in Local Government Code sections 351.181 *et seq.*, first adopted in 1989, envision county correctional centers as distinct from the county jail proper. Acts 1989, 71st Leg., ch. 785, § 3.03, at 3486. Section 351.183 authorizes establishment of such facilities for the housing of persons convicted of misdemeanors, persons meeting conditions of probation, and persons incarcerated for violation of conditions of probation; thus, they provide an alternative to incarceration in a conventional jail for the specified types of prisoners. Since county correctional facilities are distinct from the county jail proper, they are not subject to section 351.006(d) and (e).

We conclude that the county detention facilities you ask about -- "low risk" facilities, "lock-ups," "detention centers," and "county correctional centers" -- are "county jails" for purposes of commission jurisdiction over those facilities under Government Code chapter 511. The commission has authority, however, to establish reasonable standards for the design of such ancillary facilities which depart from the single cell and dormitory requirements for "county jails" in Local Government Code section 351.006(d) and (e).

## SUMMARY

All county facilities used by a county for the confinement of county prisoners are subject to the jurisdiction of the Commission on Jail Standards under Government Code chapter 511. The commission has authority to establish reasonable

standards for the design of county detention facilities ancillary to the "county jail" proper that depart from the single cell dormitory requirements for "county jails" in Local Government Code section 351.006(d) and (e).

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by William Walker and Susan L. Garrison
Assistant Attorneys General